# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **QBE INSURANCE CORP.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-09-S-171-NE** |
| ) | |
| **BRANUM CONTRACTING, INC.,** ) | |
| *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff, QBE Insurance Corporation ("QBE"), filed this case seeking a declaratory judgment that Commercial General Liability Policy No. ANM22610 does not provide coverage to defendants Branum Contracting, Inc., Leonard Branum, Runnell Branum, and RBK Leasing, Inc., for claims asserted in an underlying lawsuit pending in the Circuit Court of Madison County, Alabama.[1]  The case currently is before this court on defendants' original and amended motions to dismiss plaintiff's complaint.[2]

## I. STANDARDS OF REVIEW

Defendants argue that plaintiff's complaint should be dismissed both because it fails to state a claim upon which relief can be granted, and because there is no basis

---

[1]*See* doc. no. 1 (Complaint).

[2]*See* doc. nos. 11 and 13.

for the assertion of federal subject matter jurisdiction.

**A.**     **Federal Rule of Civil Procedure 12(b)(6):** *failure to state a claim upon which relief can be granted*

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[3] This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim

---

[3] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

> (1) lack of subject-matter jurisdiction;
>
> (2) lack of personal jurisdiction;
>
> (3) improper venue;
>
> (4) insufficient process;
>
> (5) insufficient service of process;
>
> (6) failure to state a claim upon which relief can be granted; and
>
> (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[4]  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads

---

[4] With but few exceptions (fraud claims being one, *see* Fed. R. Civ. P. (9)(b)), there are only three requirements for pleading a claim in a federal action:  "(1) a short and plain statement of the grounds for the court's jurisdiction. . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a).

As the Eleventh Circuit observed in *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997),

> [t]he purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief.  It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.  . . .

*Id*. at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief*.

*Ashcroft v. Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

**B.     Federal Rule of Civil Procedure 12(b)(1):** *lack of subject matter jurisdiction*

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).

When ruling upon a 12(b)(1) motion asserting a lack of jurisdiction on the face of the plaintiff's complaint, as with a Rule 12(b)(6) motion, the court must consider the allegations of the complaint as true. *See Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981) (citations omitted).[5]

## II. RELEVANT ALLEGATIONS

Thomas DeWille filed a lawsuit against Leonard Branum and Branum

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Contracting, Inc., in the Circuit Court of Madison County, Alabama, on August 27, 2008 (the "state court case").[6] The complaint in that action alleges that:

> 2. On or about July 21, 2005, the plaintiff entered into an agreement with the defendants for the construction of a pond on the property of the plaintiff at 189 Richard Branum Drive, Owens Crossroads, Alabama, 35763. The defendants agreed to construct the pond to the size and depth desired by the plaintiff, with the sides of the pond appropriately sloped. The defendants agreed to construct the pond at no cost to the plaintiff, in exchange for the defendants receiving the use and benefit of the excavated earth.
>
> 3. The defendants excavated the site to a greater size and depth than was specified by the plaintiff and the sides of the pond were excavated at an inappropriately steep slope, causing the plaintiff to suffer damages.
>
> 4. The defendants failed and refused to finish the pond, causing the plaintiff to suffer damages.[7]

The state court complaint contains claims for breach of contract, fraud, fraud in the inducement, unjust enrichment, conversion, and negligence and/or wantonness. DeWille requests an unspecified amount in compensatory and punitive damages, plus interest, attorney's fees, costs, and any other relief to which he might be entitled.[8]

QBE, the plaintiff in this case, issued a commercial general liability insurance policy bearing policy no. ANM22610 ("the policy"), effective October 2, 2004

---

[6] *See* doc. no. 1 (Complaint), at Exhibit A (Complaint in *DeWille v. Leonard Branum and Branum Contracting, Inc.,* Civil Action No. CV08-900798, in the Circuit Court of Madison County, Alabama) (the "state court complaint").

[7] State court complaint, at ¶¶ 2-4.

[8] *See id.* at ¶¶ 5-16.

through October 2, 2005, to defendant Branum Contracting, Inc.[9] The policy contains various exclusions and requirements for coverage.[10]  QBE requests a declaratory judgment that the policy does not provide coverage for any of the claims asserted in the state court lawsuit, and that QBE consequently does not owe any of the defendants a duty to defend or indemnify for any of those claims.[11]  QBE nonetheless continues to defend Branum Contracting and Leonard Branum in the state court case under a reservation of rights.[12]

### III. DISCUSSION

The court must first address defendants' argument that there is no subject matter jurisdiction over plaintiff's claims. *See University of South Alabama,* 168 F.3d at 410 ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."). In the complaint it filed with this court, plaintiff asserts that "[j]urisdiction of this action is proper pursuant to 28 U.S.C. § 1332, as (a) there is complete diversity of citizenship between QBE and the Respondent [sic], and (b) the amount in controversy (exclusive of interest and costs) upon information and

---

[9]Complaint, at ¶ 17.

[10]*Id.* at ¶ 18.

[11]*See id.* at ¶¶ 20-27.

[12]*Id.* at ¶¶ 14-16. A review of the Case Action Summary for the state court case reveals that the case has been set for a jury trial on November 2, 2009.

belief exceeds $75,000.00."[13] *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]").

Defendants do not contest that the parties are of diverse citizenship, and, indeed, the complaint states that plaintiff is a Pennsylvania corporation with its principal place of business in the State of New York, while all defendants are Alabama residents.[14]

Defendants do argue, however, that the jurisdictional amount in controversy has not been satisfied.

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir.1997). In other words, the value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted.

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). In this case, plaintiff is requesting the court to determine that it does not have an obligation to defend the state court case, and that it will not be required to pay any judgment entered in the state court case. Thus, the value of the requested declaratory relief from

---

[13]Complaint, at ¶ 3.
[14]*Id.* at ¶¶ 1-2.

plaintiff's perspective is the amount it would cost to defend the underlying state court action, plus the amount of any judgment that is likely to be entered in the state court case. *See Clarendon America Insurance Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006) ("In an action by an insurance company seeking a court's declaration that it has no duty to defend or indemnify its insured in an underlying lawsuit, a court examines the following factors to determine the amount in controversy:  (1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit.") (citations omitted).[15]

The coverage limit under the relevant insurance policy in this case is $1,000,000 — well in excess of the $75,000 jurisdictional minimum.  Even so, there is no basis for concluding that the damages sought in the underlying lawsuit are likely to exceed the jurisdictional amount.

The plaintiff in the underlying state court case did not request a specific amount in damages.  "[W]here jurisdiction is based on a claim for indeterminate damages, .

---

[15]Defendants assert that only the value of plaintiff's duty to defend the state court case, not the value of its duty to indemnify defendants for any judgment entered, should be considered in evaluating the jurisdictional amount in controversy.  Defendants base this argument on the underlying assertion that the existence of plaintiff's duty to indemnify is not ripe for consideration because no judgment has yet been entered in the state court case.  The court need not address this argument, however, because, even considering plaintiff's duty to indemnify for any judgment entered in the state court case, plaintiff still has not established, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied.

. . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir.1996), *abrogated on other grounds by Cohen*, 204 F.3d at 1072-77). Here, "QBE concedes that because it does not specify an exact amount in controversy in its Complaint for Declaratory Judgment, that its burden as the party invoking federal jurisdiction is that of preponderance of the evidence."[16]

QBE's complaint in this case does not contain sufficient allegations to satisfy that burden. QBE merely states that "the amount in controversy (exclusive of interest and costs) *upon information and belief* exceeds $75,000.00."[17] A conclusory allegation made "upon information and belief" of counsel cannot satisfy plaintiff's burden. *See Leonard v. Enterprise Rent A Car,* 279 F.3d 967, 972 (11th Cir. 2002) ("'A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.'") (quoting *Williams v. Best Buy Co.,* 269 F.3d 1316, 1318 (11th Cir. 2001)).[18] Otherwise, plaintiff simply refers to the

---

[16]Doc. no. 14 (plaintiff's response brief), at 8.

[17]Complaint, at ¶ 3 (emphasis supplied).

[18]The *Leonard* decision addressed the removal of a case from state to federal court. Even so,

allegations of the state court complaint. There, DeWille, the plaintiff, alleges that Branum Contracting, Inc. and Leonard Branum agreed to construct a pond at a specified size, depth, and slope, but the pond was not constructed to the proper specifications. DeWille alleges that he suffered economic damages and mental anguish, but he does not describe those alleged damages in any detail. It is not self-apparent from any of the allegations of the complaint that DeWille's damages would exceed $75,000.

QBE did not offer any further proof of the extent of DeWille's damages in its response brief to defendants' motion to dismiss. QBE claims that it has met its burden of establishing the requisite amount in controversy by contending "that the combination of defense costs as well as its potential exposure for indemnification of the insured due to the allegations made by the plaintiff in the underlying litigation far exceeds the jurisdictional requisite of $75,000 necessary to invoke this Court's subject matter jurisdiction on diversity grounds."[19] More specifically, QBE asserts that

---

the language from that case addressing federal subject matter jurisdiction applies equally in the context of the current case, which addresses a motion to dismiss a declaratory judgment action for lack of subject matter jurisdiction. *See Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 n.1 (11th Cir. 2003) (holding that the removal and declaratory judgment contexts are "analogous" for purposes of addressing federal subject matter jurisdiction). *Accord St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998) ("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be instructive in the converse context of declaratory judgment actions....").

[19]Doc. no. 14 (plaintiff's response brief), at 8.

DeWille is likely to recover more than $75,000 because he asserted six claims for relief in his state court complaint, including four claims that could result in the recovery of punitive damages.

QBE acknowledges that the recovery of punitive damages is limited under Alabama law to three times the level of a plaintiff's compensatory damages,[20] but it argues that, even with those limitations, DeWille's compensatory damages would only have to be one penny above $25,000 in order for DeWille to recover more than $75,000. As an initial matter, the court disagrees with QBE's calculation. If DeWille recovered $25,000 in compensatory damages, he would be eligible under Alabama law to recover three times that amount, or $75,000, in punitive damages, for a total award of $100,000. Actually, a more accurate calculation would be as follows: if DeWille recovered $18,750.00 in compensatory damages, he would eligible for an award of punitive damages in the amount of $56,250.00, for a total award of $75,000.00. Thus, DeWille would only have to recover a minimum of $18,750.01 in compensatory damages in order for his *total* award to potentially equal more than $75,000.

QBE offers the following explanation of why DeWille's damages would, more likely than not, exceed the amount of the jurisdictional threshold:

> The facts of the underlying litigation in and of themselves show that it is highly unlikely the compensatory damages would not be more than

---

[20]*See* Ala. Code § 6-11-21 (1975).

$25,001 [actually $18,750.01]. The underlying case involves a heavy construction project whereby a large pond/pit/hole was dug on DeWille's property and large quantities of earth were removed. Not only is it alleged that too much earth was removed (or "converted") from DeWille's property but also that the pond that was built was not built properly, thereby doing physical damage to DeWille's property.

Based on the breach of contract allegation alone, the compensatory damages could exceed the statutory amount in controversy requirement of $75,000. In order to put DeWille back in the position he would have been in prior to his contract with the Defendants, it would obviously cost a substantial amount of money to put his land back the way it was before the digging. Massive quantities of earth would have to be hauled back in, large equipment would have to move the earth to appropriately fill the hole back in, and then it would have to be appropriately graded and landscaped. Should this particular remedy not be sought, then it would have to be determined how much earth in excess of the agreed upon amount was converted from DeWille and a value would have to be placed on that. Further, someone would have to go in with heavy earth moving machinery and fix the sloping of the pond to put it in the condition the Defendants were supposed to leave it in. Again, the value of the extra dirt taken plus the cost of fixing the sloping of the sides of the pond would be a substantial measure of compensatory damages. Add to these damages further compensatory damages to DeWille for emotional distress and the total compensatory damage award could be exceedingly large.

While it is likely that the damages in this case would exceed the statutory requirement of $75,000 based upon the breach of contract claim alone, when the potential amount of punitive damages from DeWille's tort claims are added to these substantial compensatory damages, it is not only more likely than not, but convincingly clear that the potential liability of the Defendants exceeds $75,000. The Defendants face claims for fraud, fraud in the inducement, conversion, negligence and wantonness[,] all of which could subject them to a punitive damage judgment.[21]

---

[21] Doc. no. 14, at 10-12.

While this explanation certainly is lengthy, it amounts to no more than a series of conclusory allegations. QBE suggests that the facts of the underlying complaint speak for themselves.[22] They do not. The very fact that DeWille suffered damage to his property, as well as potential emotional distress damages, does not mean that those damages will exceed $75,000. QBE's use of descriptive terms indicating largeness — whether referring to the size of the project ("heavy construction project"), the amount of earth removed ("large" or "massive quantities of earth"), the amount of money it would cost to make DeWille whole ("it would obviously cost a substantial amount of money to put his land back the way it was before the digging," "a substantial measure of compensatory damages," "the total compensatory damage award could be exceedingly large"), the size of the equipment that would be used ("large equipment"), or the extent of plaintiff's confidence in its position ("highly unlikely," "obviously," and "convincingly clear") — do not constitute proof that the amount in controversy exceeds $75,000. QBE could have offered the testimony of someone in the construction industry addressing the potential cost of performing the work that would be necessary to make DeWille whole. *See Williams*, 269 F.3d at 1319 ("If the jurisdictional amount is not facially apparent from the complaint, the court . . . may require evidence relevant to the controversy at the time the case was removed."). It

---

[22]*See, e.g., id.* at 10 ("The facts of the underlying litigation in and of themselves show that it is highly unlikely the compensatory damages would not be more than $25,001.").

did not. QBE also could have cited to similar cases in which judges or juries awarded more than $75,000 in damages. *See Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.,* 995 F. Supp. 1388, 1392 (M.D. Ala. 1998) (holding that, when assessing whether a party has met its burden of establishing the amount in controversy by a preponderance of the evidence, the "court may examine decisions rendered in cases on the same type of suit") (citations omitted). It did not do that either. Furthermore, QBE has not offered any proof of how much it would cost to defend the underlying lawsuit.

Because plaintiff has not provided *any* proof — indeed, nothing more than conclusory allegations — that the amount in controversy exceeds $75,000, plaintiff has not satisfied its burden of showing, by a preponderance of the evidence, that federal subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Accordingly, this case is due to be dismissed for lack of subject matter jurisdiction.[23]

### IV. CONCLUSION AND ORDER OF DISMISSAL

---

[23]Because this court lacks subject matter jurisdiction over plaintiff's claims, the court need not address — and, indeed, is without power to address — defendants' other arguments for dismissal of plaintiff's complaint.

In consideration of the foregoing, defendants' amended motion to dismiss plaintiff's complaint is GRANTED. Defendants' original motion to dismiss plaintiff's complaint is DENIED as moot. It is ORDERED that all claims asserted by plaintiff are DISMISSED for lack of subject matter jurisdiction. The dismissal is without prejudice to plaintiff's right to refile the case in an appropriate state court. All costs incurred herein are taxed to plaintiff. The Clerk is directed to close this file.

DONE this 21st day of September, 2009.

_____
United States District Judge